## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAWYERS' COMMITTEE FOR 9/11 INQUIRY, INC.; AND RICHARD GAGE; | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No.** _____ |
| WILLIAM P. BARR, ATTORNEY GENERAL OF THE UNITED STATES; UNITED STATES DEPARTMENT OF JUSTICE; AND GEOFFREY BERMAN, UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK. | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT FOR MANDAMUS RELIEF AND DISCLOSURE OF GRAND JURY RECORDS

1.     This is an action to compel officers of the United States to perform their duty, brought pursuant to the federal mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedures Act (APA), 5 U.S.C. §§ 702, 706.

2.     The officers of the United States sought to be compelled to perform their duty are the Honorable William P. Barr, Attorney General of the United States, and the Honorable Geoffrey Berman, United States Attorney for the Southern District of New York. The federal agency sought to be compelled to comply with 18 U.S.C. § 3332(a) is the United States Department of Justice.

3.     The mandatory duty sought to be compelled is the duty of the United States Attorney for the Southern District of New York to inform a special grand jury of the Plaintiffs' report of alleged federal crimes, which report was submitted to the United States Attorney in the form of Plaintiffs' Petition and Amended Petition. This duty is specified in 18 U.S.C. § 3332(a)

which states, *inter alia*, that:

> (a) It shall be the duty of each such [special] grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. **Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.**

18 U.S.C. § 3332(a) (emphasis added).

4.     The Department of Justice has recognized the existence of this duty:

> It is incumbent upon any such government attorney to whom it is reported that a Federal offense was committed within the district, if the source of information so requests, to refer the information to the special grand jury, naming the source and apprising the jury of the attorney's action or recommendation regarding the information.

U.S. Attorneys' Manual, Criminal Resource Manual, § 158.

5.     This Court has also recognized the mandatory nature of this duty:

> 18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to the plaintiffs, and the breach of that duty gives the plaintiffs standing to seek its enforcement. …

> To argue, as the government does … that the prosecutor has total discretion in deciding what information to present to the grand jury flies in the face of the Act's legislative history. …

> Thus both the language of 18 U.S.C. § 3332(a) and its legislative history indicate that Congress intended to remove the prosecutor's discretion in deciding whether to present information to the grand jury. He retains discretion with respect to how he acts and what he recommends concerning that information.

*In re Grand Jury Application*, 617 F.Supp. 199, 201, 205-06 (S.D.N.Y. 1985).

**JURISDICTION**

6.     This court has federal question jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.").

7.     This court also has jurisdiction over this action pursuant to the federal mandamus

statute, 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the

nature of mandamus to compel an officer or employee of the United States or any agency thereof

to perform a duty owed to the plaintiff.").

**VENUE**

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).

Actions where defendant is officer or employee of the United States--
(1) In general.--A civil action in which a defendant is an officer or employee of
the United States or any agency thereof acting in his official capacity or under
color of legal authority, or an agency of the United States, or the United States,
may, except as otherwise provided by law, be brought in any judicial district in
which (A) a defendant in the action resides, (B) a substantial part of the events or
omissions giving rise to the claim occurred

28 U.S.C § 1391(e).

9.     The United States Attorney for the Southern District of New York "resides" in the

Southern District for purposes of venue.

10.    The events and omissions and actions and inaction constituting both the federal

crimes alleged in Plaintiffs' Petition and Amended Petition at issue in this action and relating to

the United States' Attorney's failure to comply with his mandatory duty to relay Plaintiffs' report

of these alleged federal crimes to a federal special grand jury occurred in the Southern District.

**PARTIES**

11.     Plaintiff Lawyers' Committee for 9/11 Inquiry, Inc. (hereafter "Lawyers'

Committee") is a Pennsylvania non-profit corporation. The mission of the Lawyers' Committee

is to promote transparency and accountability regarding the tragic events of September 11, 2001

(9/11). The Lawyers' Committee believes that the family members of the victims of the tragic

crimes of 9/11 have a compelling right to know the full truth of what happened to their loved

ones on 9/11, and that Congress and the Department of Justice, in order to do their jobs, have a

compelling need to know.

12.     The Lawyers' Committee has a special interest in the United States Attorney

reporting the evidence submitted in their Amended Petition to a special federal grand jury.

Examination of this evidence by a special grand jury would promote both of the primary goals in

the Lawyers' Committee's non-profit mission: transparency and accountability regarding the

tragic events of 9/11. A special grand jury has the power not only to investigate and indict, which

if exercised would promote the goal of accountability, but also to issue public reports regarding

any government malfeasance discovered during the investigation, which would promote the goal

of transparency.

13.     On April 10, 2018, the Lawyers' Committee delivered to the Office of the United

States Attorney for the Southern District of New York their fifty-four page "Petition To Report

Federal Crimes Concerning 9/11 To Special Grand Jury or in the Alternative to Grand Jury

Pursuant to the United States Constitution and 18 U.S.C. § 3332(a)" (hereafter "Petition") along

with the extensive scientific and eye-witness testimony exhibits referenced in the Petition, as

well as a cover letter. In the Petition and cover letter the Lawyers' Committee requested that the

United States Attorney present the information in the Petition concerning alleged federal crimes

to a federal special grand jury pursuant to the United States Attorney's duty to do so under 18 U.S.C. § 3332(a).

14.     As noted in the Petition, the City of New York has issued over 2,700 death certificates related to the attacks on the World Trade Center on 9/11. In addition to the murder of over 2,000 innocent civilians, hundreds of First Responders were also murdered on 9/11 while selflessly attempting to save others. Many more First Responders have died subsequent to 9/11 as a result of their exposure to toxic and corrosive air contaminants at Ground Zero while participating in heroic rescue and recovery work. A number of FBI agents have also been reported to have died as a result of such exposures. Plaintiffs' Amended Petition presented to the United States Attorney extensive evidence heretofore ignored by federal authorities that the World Trade Center (WTC) Twin Towers (WTC1 and WTC2) and the Salomon Brothers Building a.k.a. WTC Building 7 (WTC7) collapsed on 9/11 due to the detonation of pre-planted explosives and/or incendiaries.

15.     On July 30, 2018, the Lawyers' Committee delivered to the Office of the United States Attorney for the Southern District of New York their fifty-eight page "First Amended Petition To Report Federal Crimes Concerning 9/11 To Special Grand Jury or in the Alternative to Grand Jury Pursuant to the United States Constitution and 18 U.S.C. § 3332(A)" (hereafter "Amended Petition") and incorporated by reference in that Amended Petition the extensive scientific and eye-witness testimony exhibits referenced in the original Petition that had already been submitted to the United States Attorney's Office on April 10, 2018. A cover letter was also submitted with the Amended Petition. In the Amended Petition and cover letter, the Lawyers' Committee requested that the United States Attorney present the information in the Amended Petition concerning alleged federal crimes to a federal special grand jury pursuant to the United

States Attorney's duty to do so under 18 U.S.C. § 3332(a). The primary change in the Amended Petition as compared to the original Petition is that three additional federal crimes were added to the crimes being alleged in the Amended Petition.[1]

16.　　Plaintiff Richard Gage is an experienced architect who has played a leading role in the independent multi-year investigation of the causes of the collapse of the WTC towers and WTC Building 7 on 9/11. Mr. Gage is the founder and President of the non-profit organization Architects & Engineers for 9/11 Truth. The Lawyers' Committee Petition submitted to the United States Attorney which is at issue here included substantial testimony from Mr. Gage and his scientists, engineer, and architect colleagues.

17.　　Mr. Gage signed on to the Lawyers' Committee's Petition via the Lawyers' Committee web page after the initial submission of the Petition to the United States Attorney and thereby joined in the aforementioned Lawyers' Committee's request to the United States Attorney. His name, as an additional supporter of the Lawyers' Committee's Petition, was submitted by the Lawyers' Committee, along with the names of approximately two thousand others, to the United States Attorney's Office in a supplement to the original Petition.

## FACTS

18.　　All of the foregoing paragraphs are incorporated herein by reference.

19.　　On April 10, 2018, the Lawyers' Committee, after several months of research, investigation, and analysis, including the receipt of extensive testimony from scientists, architects, and engineers, submitted to the Office of the United States Attorney for the Southern

---

[1] The crimes reported in the Amended Petition involve providing material support to terrorists, the killing of federal agents, terrorist acts transcending national boundaries, and bombings of places of public use and government facilities. *See* 18 U.S.C. § 2332f; 18 U.S.C. § 1114; 18 U.S.C.A. § 2332b; and 18 U.S.C. § 2339A. It should be noted that there is no statute of limitations roadblock to prosecution of any of these specific crimes.

District of New York their Petition, with accompanying exhibits and a cover letter. The Petition was submitted in order to report, and to provide factual information and evidence, to the United States Attorney regarding certain federal crimes that have been committed within the Southern District of New York on September 11, 2001, and in the months leading up to 9/11, related to the attacks on the World Trade Center.

20.     In the Petition and in the accompanying cover letter, the Lawyers' Committee respectfully requested that the United States Attorney submit the information in the Petition and its exhibits to a special grand jury that is empaneled or will next be empaneled.

21.     The Lawyers' Committee in the Petition and accompanying cover letter reminded the United States Attorney of his duty pursuant to statute, 18 U.S.C. § 3332(a), to present to a special grand jury citizen reports of information regarding federal crimes such as that presented in the Lawyers' Committee's Petition.

22.     The Lawyers' Committee also requested, in its Petition and the accompanying cover letter, that the United States Attorney, pursuant to 18 U.S.C. § 3332, inform any currently empaneled special grand jury, and any subsequently empaneled special grand jury, that the Lawyers' Committee is the source that reported this information regarding these crimes to the United States Attorney and provide such grand juries the contact information for the Lawyers' Committee.

23.     In the July 30, 2018 Amended Petition delivered to the Office of the United States Attorney, as in the original Petition, the Lawyers' Committee presented extensive scientific and eye-witness evidence that explosives were used to destroy three WTC buildings on 9/11. That evidence included the following:

a) A report in a peer-reviewed scientific journal of independent scientific laboratory

7

analysis of WTC dust samples showing the presence of high-tech explosives and/or incendiaries in the form of nanothermite or nanothermate.

b) Testimony of numerous New York firefighters who were 9/11 First Responders that they heard sounds of explosions and saw explosions on 9/11 at the WTC resembling controlled demolitions.[2]  Some reported seeing molten iron like in a foundry, which would not be possible as a result of fires fueled by building contents and jet fuel alone.

c) Testimony and scientific analysis by numerous architects, engineers, physicists, and chemists which demonstrates conclusively that the WTC Twin Towers and WTC Building 7 were brought down by use of explosives and incendiaries, not by airplane impacts or the resulting jet fuel and building fires. This expert analysis and opinion includes technical analysis of video evidence of the WTC building collapses demonstrating that WTC1 and WTC2 fell at near free-fall acceleration, while WTC7 exhibited actual free-fall acceleration for approximately one third of the total collapse time (which would not be physically possible absent use of explosives and/or incendiaries).

d) Expert analysis of seismic evidence resulting in an expert opinion that explosions occurred at the WTC towers on 9/11 prior to the airplane impacts, and prior to the building collapses, which expert analysis was supported by the testimony of WTC janitor William Rodriguez and other eyewitnesses who reported that they heard, saw, and felt evidence of

---

[2]  The First Responders reported on 9/11: "Bombs," "explosions" at the lowest level and the highest level of the buildings before the collapses, flames being blown out, a "synchronized deliberate" kind of collapse, like a "professional demolition," "pop, pop, pop, pop, pop" sounds before the collapses, "low-level flashes," "three floors explode," "the antenna coming down," like "those implosions on TV," "popping sounds" and "explosions" "going both up and down and then all around the building," "with each popping" "orange and then a red flash came out of the building" and "go all around the building," "looked like it was a timed explosion," "at the very top simultaneously from all four sides, materials shot out horizontally" before the collapse began, "boom, boom, boom, boom, and then the tower came down," and "going all the way around like a belt, all these explosions.

explosions in the basement and lobby of WTC1 and WTC2 prior to the WTC plane impacts.

e) Scientific reports and testimony documenting the presence of molten iron at Ground Zero, which proves that temperatures there were much higher than those that jet fuel fires and building contents fires could create. The extreme temperatures documented are consistent with use of the high tech explosive and/or incendiary materials such as nanothermite or nanothermate.

f) Scientific reports and testimony documenting the presence in the WTC dust of previously molten iron microspheres in large quantities, as confirmed by electron microscope analysis of WTC dust samples by both government and independent scientists. It is impossible for jet fuel fires and office contents fires to create such microspheres but such microspheres would be expected from the use of nanothermite or nanothermate.

g) Video evidence that shows the ejection during the collapse of WTC 1 and 2 of heavy steel structural elements laterally some distance from these WTC buildings which would not be possible from a gravity-driven collapse.

h) Scientific analysis, testimony, and government reports confirming sulfidation and high temperature corrosion of the steel found in the rubble after the collapse of the WTC towers and WTC 7, a phenomenon not expected in a jet fuel fire and gravity driven collapse, but consistent with the use of nanothermate.

24.    In the Petition and Amended Petition, the Lawyers' Committee concludes that the scientific, video, and eye-witness evidence taken together is conclusive that explosive and/or incendiary devices that had been pre-placed at the WTC were detonated causing the complete collapse of the World Trade Center Twin Towers on 9/11, substantially increasing the tragic loss of life from the 9/11 terrorist attacks. The Lawyers' Committee states unequivocally that the evidence permits no other conclusion -- as a matter of science, as a matter of logic, and as a

matter of law.

25.     Notwithstanding the Lawyers' Committee's conclusions in this regard, conclusions supported by numerous scientists, architects, and engineers, the Lawyers' Committee in the Petition and Amended Petition do not ask that the United States Attorney or a special grand jury adopt these or any other conclusions. The Lawyers' Committee simply asked the United States Attorney to honor its non-discretionary duty pursuant to 18 U.S.C. § 3332(a) to submit this evidence to a special grand jury and allow the special grand jurors to draw whatever conclusions of their own they find justified after investigating the matter using the substantial investigative powers and tools the law provides to a special grand jury.

26.     In the Petition and Amended Petition, the Lawyers' Committee points out that given the nature of these crimes, they were not committed by a single person acting alone but rather by several persons acting in concert. The Amended Petition urges that the attention of the jurors should not be limited simply to the four primary federal crimes alleged, but should include a full inquiry into the crimes of aiding and abetting and conspiracy, and into those who may be guilty of these additional crimes, whether or not such parties are principals (direct perpetrators).

27.     The Lawyers' Committee, in addition to delivering their Petition and exhibits, and the Amended Petition, to the Office of the United States Attorney, also had delivered to the Office of the Attorney General of the United States (and to the President of the United States) a copy of the Amended Petition.

28.     The Office of the United States Attorney did confirm receipt of the Lawyers' Committee's original Petition. Plaintiffs' representatives did obtain a copy of the Amended Petition stamped with the United States Attorney's Office security stamp when they hand delivered the Amended Petition to the United States Attorney's Office on July 30, 2018.

Subsequently, on November 7, 2018, the U.S. Attorney's Office sent the Lawyers' Committee a letter stating that the U.S. Attorney would comply with 18 U.S.C. § 3332(a). This letter was signed by Assistant U.S. Attorney (AUSA) Michael Ferrara, Chief of the Terrorism and International Narcotics Unit at the Office of the U.S. Attorney for the Southern District of New York. No details regarding what actions the U.S. Attorney would take were provided.

29.     The Plaintiffs have not received any further written communications from the Office of the United States Attorney or the Department of Justice. The Executive Director for the Lawyers' Committee David Meiswinkle, along with the Lawyers' Committee Litigation Director Mick Harrison, did communicate with AUSA Ferrara by telephone in June of 2019 and asked AUSA Ferrara if he could provide the status of the U.S. Attorney's action on the Lawyers' Committee's Petition and Amended Petition. AUSA Ferrara stated that, because of the secrecy requirements of Fed. R. Crim. P. 6(e), he could not provide any information beyond the letter previously provided by the AUSA stating that the U.S. Attorney would comply with 18 U.S.C. § 3332(a). The Plaintiffs thus have no concrete evidence that the Defendants have actually provided their Petition, Amended Petition, the exhibits to these petitions, or the Plaintiffs' names and contact information to a federal special grand jury as required by 18 U.S.C. § 3332(a).

30.     Plaintiff Lawyers' Committee has also submitted the evidence referenced in their original Petition and Amended Petition to the State Department's "Rewards for Justice" (RFJ) program via Email sent to info@rewardsforjustice.net. On August 30, 2019, the Lawyers' Committee filed its application for such a reward with the U.S. State Department under the RFJ Program.

31.     The Lawyers' Committee has asked to be considered for a reward under the RFJ

program.[3] The United States, via this RFJ program, offers rewards or bounties for information leading to the arrest of persons engaged in terrorism (https://rewardsforjustice.net).

32.    The RFJ is the U.S. Department of State's Counter-Terrorism Rewards Program, and was established by the 1984 Act to Combat International Terrorism, Public Law 98-533 (codified at 22 U.S.C. § 2708). Administered by the State Department's Bureau of Diplomatic Security, RFJ's goal is to bring international terrorists to justice and prevent acts of international terrorism against U.S. persons or property. Under this program, the Secretary of State may authorize rewards for information that leads to the arrest or conviction of anyone who plans, commits, or attempts international terrorist acts against U.S. persons or property.[4]

33.    Most RFJ reward offers are for up to $5 million. However, reward offers can range from under $1 million to up to $25 million. In addition, RFJ can also pay rewards in cases where there is no prior reward offer, in appropriate circumstances. Since its inception, RFJ has paid more than $125 million to over 80 individuals for information that prevented international terrorist attacks or helped bring to justice those involved in prior acts. Reward payment amounts are based on a number of factors, including, but not limited to, the threat posed by a given terrorist, the severity of the danger or injury to U.S. persons or property, and the value of the information provided.

34.    Anyone who provides actionable information that will help favorably resolve acts

---

[3] The United States Court of Appeals for the District of Columbia Circuit has recognized that an applicant for a bounty may have special standing to compel performance by the United States Attorney of the duty in 18 U.S.C. § 3332(a). "We emphasize that Mohwish lacks standing because he has failed to identify any cognizable injury, not because § 3332 is inherently unenforceable at the instance of a private litigant; for example, a person who would be entitled to a bounty if a prosecution were initiated might well have standing. Cf. *Lujan, 504 U.S. at 573, 112 S.Ct. at 2143.*" *Sargeant v. Dixon*, 130 F.3d 1067, 1070 ( D.C. Cir. 1997).

[4] As Plaintiffs' Petition notes, the detonations of the pre-planted explosive and/or incendiary devices on 9/11 at the WTC were timed and coordinated with the aircraft attacks on WTC1 and WTC2, and substantially contributed to the destruction of those three WTC buildings and their contents, and substantially increased the tragic loss of life that occurred on 9/11.

of international terrorism against the U.S. anywhere in the world may potentially be eligible for a reward. If, for example, a terrorist involved in either the planning or execution of an attack against U.S. persons and/or property is arrested or convicted as a result of information provided by a source, that source may be eligible for a reward.

**COUNT I:     MANDAMUS RELIEF PURSUANT TO 28 U.S.C. § 1361**

35.     All of the foregoing paragraphs are incorporated herein by reference.

36.     In order to grant a request for mandamus a court must find that three requirements are satisfied: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972), cert. denied, 411 U.S. 918 (1973); *In re Grand Jury Application*, 617 F.Supp. 199 (S.D.N.Y. 1985).

37.     As this Court has held in regard to the first requirement, 18 U.S.C. § 3332(a) establishes a clear right in the Plaintiffs here, who provided to the United States Attorney, via their Amended Petition, substantial evidence and information relating to alleged (and apparent) federal crimes, to have the United States Attorney provide their information regarding such crimes to a special grand jury. *In re Grand Jury Application*, 617 F.Supp. 199, 201, 206 (S.D.N.Y. 1985).

> 18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to the plaintiffs, and the breach of that duty gives the plaintiffs standing to seek its enforcement. ... 18 U.S.C. § 3332(a) creates a right in every person to have information known by them concerning organized crime to be presented to the grand jury.

*Id.*

38.     This Court has also held that the second requirement for mandamus relief, a

plainly defined and peremptory duty on the part of the defendant, is established by 18 U.S.C. § 3332(a). This Court has held that:

> 18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to the plaintiffs …
>
> Thus both the language of 18 U.S.C. § 3332(a) and its legislative history indicate that Congress intended to remove the prosecutor's discretion in deciding whether to present information to the grand jury.

*In re Grand Jury Application*, 617 F.Supp. 199, 201, 206 (S.D.N.Y. 1985).

39.     In regard to the third and last requirement for mandamus relief, that Plaintiffs have no other adequate remedy available, that requirement is also satisfied here as there is no other legal vehicle for compelling the United States Attorney to provide Plaintiffs' Amended Petition information to a special grand jury, with the possible exception of a mandamus relief request under the APA, which Plaintiffs include *infra* as an additional claim.

40.     As stated *supra*, the United States Attorney has refused to provide to the Lawyers' Committee any details regarding the status of the United States Attorney's action on Plaintiffs' Petition and Amended Petition, including whether or not the United States Attorney has actually provided a special grand jury with these documents and their exhibits, or not. As a result, the United States Attorney may have, and Plaintiffs have concluded, on information and belief, that the United States Attorney here has, unlawfully withheld, in violation of his clear duty pursuant to 18 U.S.C. § 3332(a), the action requested by Plaintiffs, pursuant to their statutory (and constitutional) right, that the United States Attorney provide to a special grand jury the information in Plaintiffs' Amended Petition and Exhibits regarding alleged federal crimes that have been committed in the Southern District of New York. Should the disclosure of grand jury records as sought in this Complaint, or a disclosure of information pursuant to order of the court,

demonstrate to the contrary, then the Plaintiffs' mandamus claim stated in this count will be moot (i.e. this count is brought as a contingent claim or claim for alternative relief which will only be pursued by Plaintiffs if there is no disclosure showing that the United States Attorney has in fact provided Plaintiffs' Amended Petition and exhibits to a special grand jury).

41.     Consequently, Plaintiffs are entitled to a writ of mandamus and order from this Court mandating that the United States Attorney provide Plaintiffs' Amended Petition to a special grand jury and inform the special grand jury of the Plaintiffs' identity.

**COUNT II:    MANDAMUS RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURES ACT**

42.     All of the foregoing paragraphs are incorporated herein by reference.

43.     The APA provides for suits against federal agencies and officials, including claims for mandamus type relief.

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That **any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance** ... .

5 U.S.C. § 702 (emphasis added). In an action under the APA, "The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed ... ." 5 U.S.C. § 706.

44.     As stated *supra*, the United States Attorney has refused to provide to the Lawyers' Committee any details regarding the status of the United States Attorney's action on Plaintiffs'

Petition and Amended Petition, including whether or not the United States Attorney has actually provided a special grand jury with these documents and their exhibits, or not. As a result, the United States Attorney may have, and Plaintiffs have concluded, on information and belief, that the United States Attorney here has, unlawfully withheld, in violation of his clear duty pursuant to 18 U.S.C. § 3332(a), the action requested by Plaintiffs, pursuant to their statutory (and constitutional) right, that the United States Attorney provide to a special grand jury the information in Plaintiffs' Amended Petition and Exhibits regarding alleged federal crimes that have been committed in the Southern District of New York. Should the disclosure of grand jury records as sought in this Complaint, or a disclosure of information pursuant to order of the court, demonstrate to the contrary, then the Plaintiffs' mandamus claim stated in this count will be moot (i.e. this count is brought as a contingent claim or claim for alternative relief which will only be pursued by Plaintiffs if there is no disclosure showing that the United States Attorney has in fact provided Plaintiffs' Amended Petition and exhibits to a special grand jury).

45.     Consequently, Plaintiffs are entitled to an order from this Court mandating the United States Attorney to provide Plaintiffs' Amended Petition and Exhibits to a special grand jury and inform the special grand jury of the Plaintiffs' identity.


**COUNT III:   DISCLOSURE OF GRAND JURY RECORDS PURSUANT TO COMMON LAW RIGHTS, THE COURT'S INHERENT AUTHORITY, THE FIRST AMENDMENT, AND FED. R. CRIM. P. 6**

46.     All of the foregoing paragraphs are incorporated herein by reference.

47.     The records of and regarding any federal special grand jury to which the U.S. Attorney has submitted any information or documents related to Plaintiffs' aforementioned Petition and Amended Petition which Plaintiffs submitted to the U.S. Attorney are records of the

court.

48.     Even when grand-jury materials are in the custody of government attorneys, they remain the records of the courts, and courts have the authority to decide whether such records should be made public.

49.     Plaintiffs have a common law right and a First Amendment right to petition the court for access to these grand jury related records, in addition to the right to request disclosure of grand jury records pursuant to Fed. R. Crim. P. 6(e).

50.     The public has a general right to inspect and copy public records and documents, including judicial records and documents, a right that exists pursuant to federal common law and pursuant to the First Amendment of the United States Constitution.

51.     Grand-jury records, including transcripts of grand jury proceedings, are public records to which the public, including the Plaintiffs, may seek access.

52.     The district court has common-law supervisory authority over the grand jury.

53.     The district court's limited inherent power to supervise a grand jury includes the power to unseal grand-jury materials when appropriate.

54.     The district court has continuing common-law authority over matters pertaining to a grand jury, including any application to unseal grand-jury materials, in addition to authority to rule on disclosure of grand jury records pursuant to Federal Rule of Criminal Procedure 6(e).

55.     Ministerial records related to a grand jury are not subject to any grand jury secrecy restrictions imposed by Rule 6(e).

56.     The district court has the inherent power to release even non-ministerial records of a grand-jury in situations not contemplated by Rule 6(e).

57.     The Plaintiffs here request the District Court to release to Plaintiffs all substantive and ministerial records of any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' aforementioned Petition and/or Amended Petition and/or the evidence submitted by Plaintiffs to the U.S. Attorney in conjunction with their Petition and Amended Petition. The Plaintiffs do not request disclosure of any grand jury records that the Court determines might endanger any witness or member of the grand jury.

58.     In the alternative, the Plaintiffs here request the District Court to release to Plaintiffs all ministerial records, and such subset of the substantive records as the Court determines would be appropriate in the reasonable exercise of its discretion, of or regarding any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' aforementioned Petition and/or Amended Petition and/or the evidence submitted by Plaintiffs to the U.S. Attorney in conjunction with their Petition and Amended Petition.

59.     The ministerial records related to the relevant grand jury or grand juries that Plaintiffs herein request include:

a) Any Order authorizing summons of any Special Grand Jury or Grand Jury in the Southern District of New York that has or will receive Plaintiffs' Petition, Amended Petition, exhibits thereto, or information regarding same;

b) Any Order authorizing extension of any such Special Grand Jury or Grand Jury referenced immediately above;

c) Roll sheets reflecting composition of any such Special Grand Jury or Grand Jury referenced immediately above, attendance records of the Jurors, and any substitutions;

d) Any written authority permitting a Special Prosecutor to present evidence to any such Special Grand Jury or Grand Jury referenced immediately above;

e) Records setting forth the method by which any such Special Grand Jury or Grand Jury referenced immediately above was empaneled;

f) Voting records, related to any decision to extend the life of any such Special Grand Jury or Grand Jury referenced immediately above;

g) All records of disclosure of names of persons receiving information about matters occurring before any such Special Grand Jury or Grand Jury referenced immediately above; as defined in Federal Rule of Criminal Procedure 6(e)(3)(A)(ii).

h) All other ministerial records related to the relevant grand jury or grand juries which have received any information from the United States Attorney regarding Plaintiffs' Petition or Amended Petition (or that were in session at the time Plaintiffs submitted their original Petition to the United States Attorney or that have been convened thereafter).

60.     There are special circumstances that warrant the disclosure of the grand jury records requested herein by Plaintiffs, which special circumstances include:

a) There remains no significant government interest in continued secrecy regarding whether the U.S. Attorney has submitted to a federal grand jury all or some portion of Plaintiffs' Petition and Amended Petition and/or the evidentiary exhibits thereto given that the Plaintiffs' Petition and Amended Petition and the exhibits thereto are not only already known by Plaintiffs these documents and the fact of their submission to the U.S. Attorney, and the U.S. Attorney's agreement to comply with 18 U.S.C. § 3332(a) in regard to these submissions by Plaintiffs, have been publicly disclosed via one or more press releases, one or more media articles, and on-going availability to the public via the Lawyers' Committee's website.

b) Eighteen years have passed since the occurrence of the federal crimes related to 9/11 addressed in the Plaintiffs' Petition and Amended Petition.

c) The matters addressed in Plaintiffs' Petition and Amended Petition submitted to the U.S. Attorney for submission to a federal special grand jury are of unusual public importance.

d) It would promote public understanding of and confidence in the executive branch, the Department of Justice, the U.S. Attorney's Office, and the judiciary, to learn that the evidence submitted to the U.S. Attorney by Plaintiffs regarding the 9/11 related federal crimes alleged in the Plaintiffs' Petition and Amended Petition has finally been presented to a federal grand jury and is being diligently investigated, particularly in light of the U.S. Attorney's written assurance to the Lawyers' Committee that the U.S. Attorney would comply with the statutory requirements of 18 U.S.C. § 3332(a) in regard to Plaintiffs' Petition and Amended Petition.

e) Given the eighteen years that have passed since the crimes at issue, secrecy is not required to prevent the escape of those whose indictment may be contemplated.

f) There is no apparent reason why disclosure now of the fact that Plaintiffs' Petition, Amended Petition, and exhibits thereto have been presented to a grand jury would interfere with the freedom of the grand jury regarding its deliberations.

g) There is no apparent reason why disclosure now of the fact that Plaintiffs' Petition, Amended Petition, and exhibits thereto have been presented to a grand jury would facilitate persons subject to indictment or their friends from importuning the grand jurors.

h) There is no apparent reason why disclosure now of the fact that Plaintiffs' Petition, Amended Petition, and exhibits thereto have been presented to a grand jury would facilitate subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it.

i) There is no apparent reason why disclosure now of the fact that Plaintiffs' Petition, Amended Petition, and exhibits thereto have been presented to a grand jury would discourage

free and untrammeled disclosures by persons who have information with respect to the commission of crimes.

j) There is no apparent reason why disclosure now of the fact that Plaintiffs' Petition, Amended Petition, and exhibits thereto have been presented to a grand jury would result in a failure to protect an innocent accused who is exonerated from disclosure of the fact that he or she has been under investigation.

## PRAYER FOR RELIEF

61.   WHEREFORE, Plaintiffs respectfully request this Court to:

a)   Disclose, or Order the U.S. Attorney or Clerk of Court to disclose, to Plaintiffs all ministerial records, and such subset of the substantive records as the Court determines would be appropriate in the reasonable exercise of its discretion, of or regarding any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' aforementioned Petition and/or Amended Petition and/or the evidence submitted by Plaintiffs to the U.S. Attorney in conjunction with their Petition and Amended Petition, including any transcripts of testimony by witnesses or presentation of evidence by the United States Attorney and any documents presented to the grand jury that were provided to the United States Attorney by Plaintiffs as or with their Petition or Amended Petition;

b) In the event no disclosure is made or such disclosure as is made does not demonstrate that the United States Attorney has provided Plaintiffs' Amended Petition and exhibits and supplements to a special grand jury, Order the Defendants to:

1) Inform a federal special grand jury of the alleged federal offenses identified and described in Plaintiffs' Amended Petition and provide to such special grand jury Plaintiffs'

Amended Petition and all supplements thereto including all the exhibits referenced therein (which were provided to the United States Attorney by Plaintiffs);

2) Inform such federal special grand jury of the identity of the Plaintiffs and the other Petition signers, and their contact information; and

3) Inform such federal special grand jury of the government attorney's action or recommendation on Plaintiffs' Amended Petition.

c) Order the Defendants to keep the Plaintiffs reasonably and timely informed as to when, to what extent, and in what manner the Defendants have submitted the Plaintiffs' Petition, evidence, and names and contact information to a special grand jury so that Plaintiffs will be able to determine whether Defendants have complied with their mandatory duty under 18 U.S.C. § 3332(a).

d)      In the alternative, provide Plaintiffs' Amended Petition and exhibits directly to a federal special grand jury, in lieu of ordering the United States Attorney to do so.

e)      Award Plaintiffs their reasonable attorney fees incurred in prosecuting this action pursuant to 28 U.S.C. § 2412 and/or other applicable law; and

f)      Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

John L. O'Kelly, Esq. (7147)
127 Bengeyfield Drive
East Williston, New York 11596
Phone 516-248-3338
Fax- 516-742-0203
jokelly@optonline.net

 

 

_____

Mick G. Harrison, Esq. (Pro Hac Vice Applicant)
520 S. Walnut Street, #1147
Bloomington, IN    47402
Phone: 812-361-6220
Fax: 812-650-4374
E-mail: mickharrisonesq@gmail.com

Dated: September 6, 2019