**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

February 7, 2020

BY ECF

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *Lawyers' Committee, et al. v. William Barr, et al.*, 19 Civ. 8312 (PGG)

Dear Judge Gardephe:

    I write on behalf of Defendants William P. Barr, Attorney General of the United States, Geoffrey Berman, United States Attorney for the Southern District of New York, and the United States Department of Justice ("Defendants") to request a pre-motion conference regarding Defendants' proposed motion to dismiss Plaintiffs' complaint ("Complaint" or "Cmpl.").

    Plaintiffs Lawyers' Committee for 9/11 Inquiry, Inc. ("Lawyers' Committee") and Richard Gage ("Gage") bring this action in an effort to compel Defendants to present certain information that Plaintiffs have compiled to a federal grand jury. Specifically, the "extensive scientific and eye-witness evidence that explosives were used to destroy three WTC buildings on 9/11." Cmpl. at ¶ 23. According to the Complaint, the "evidence taken together is conclusive that explosive and/or incendiary devices that had been pre-placed at the WTC were detonated causing the complete collapse of the World Trade Center Twin Towers on 9/11 . . . the evidence permits no other conclusion—as a matter of science, as a matter of logic, and as a matter of law." *Id.* at ¶ 24.

    According to the Complaint, on April 10, 2018, the Lawyers' Committee delivered to the United States Attorney's Office for the Southern District of New York a fifty-four page "Petition to Report Federal Crimes Concerning 9/11 To Federal Grand Jury or in the Alternative to Grand Jury Pursuant to the United States Constitution and 18 U.S.C. § 3332(a)." *Id.* at ¶ 13. This petition was later amended on July 30, 2018 ("Amended Petition"). *Id.* at ¶ 15. Plaintiffs claim that Defendants have a duty to present this Amended Petition to a special federal grand jury pursuant to 18 U.S.C. § 3332(a) ("Section 3332"). This statute provides:

> It shall be the duty of each such grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have

been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

In order to compel this action, Plaintiffs bring three claims. The first is for mandamus relief pursuant to 28 U.S.C. § 1361 seeking the Court to mandate that the United States Attorney provide Plaintiffs' evidence to a special federal grand jury. Second, pursuant to the Administrative Procedures Act ("APA"), that the Court compel agency action that has been unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706. Lastly, to the extent this information has been submitted to a grand jury, Plaintiffs seek grand jury materials relating to this submission. Each of these claims must be dismissed.[1]

## I. Presentation of Evidence to a Grand Jury

Plaintiffs' claims seeking to compel the presentation of their Amended Petition to a grand jury must be dismissed for several reasons. First, Plaintiffs lack standing to pursue either mandamus relief or relief pursuant to the APA. Second, Section 3332 does not provide a private right of action. Third, Plaintiffs fail to state a claim on which mandamus relief may be granted.

### A. Standing

As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal citations and quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Id*. (internal citations and quotations omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561. (internal citations and quotations omitted).

Plaintiffs' claim fails at every step of the standing analysis. As an initial matter, Plaintiffs have not suffered any injury as a result of the allegations in their Complaint. Plaintiffs appear to rest their standing arguments on two grounds. First, that they have "a special interest in the United States Attorney reporting the evidence submitted in their Amended Petition to a special federal grand jury. Examination of this evidence by a special grand jury would promote both of the primary goals in the Lawyers' Committee's non-profit mission: transparency and accountability regarding the tragic events of 9/11." Cmpl. at ¶ 12. Second, that the presentation

---

[1] In light of the grand jury secrecy issues discussed herein, Defendants take no position as to whether they have or have not presented the Amended Petition to a grand jury. Rather, Defendants' position is that, regardless, Plaintiffs' Complaint must be dismissed.

of this information could result in Plaintiffs receiving a monetary award for bringing terrorists to justice. *Id*. at ¶¶ 30-34.

As to the first ground, this type of "special interest" is the exact type of argument that the Supreme Court has consistently rejected. *See Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (concluding that plaintiff, an environmental interest group, lacked standing despite its "special interest in this subject"); *Lujan*, 504 U.S. at 563 (noting that "special interest in the subject" is insufficient to confer standing) (internal quotation and citation omitted).

As to the second ground, Plaintiffs' complaint states that "[a]nyone who provides actionable information that will help favorably resolve acts of international terrorism against the U.S. anywhere in the world *may potentially* be eligible for a reward. If, for example, a terrorist . . . is arrested or convicted as a result of information provided by a source, that source *may be eligible* for a reward." Cmpl. at ¶ 34 (emphasis added). This admittedly hypothetical reward is insufficient to constitute an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." In fact, the number of events that would have to occur in order for Plaintiffs to receive a reward based on a terrorist's arrest or conviction are innumerable. This type of conjecture "goes beyond the limit, however, and into pure speculation and fantasy," and is insufficient to confer standing. *Lujan*, 504 U.S. at 567. Moreover, as a practical matter, such a theory of standing would effectively amount to any member of the general public having an injury when the government does not act on a piece of information provided by an individual in connection with a crime that offers a reward. Such a broad conferral of jurisdiction militates against standing here. *See Lujan*, 504 U.S. at 575 ("[I]t is not sufficient that he has merely a general interest common to all members of the public.").

Additionally, the Supreme Court has squarely rejected that a bounty itself is sufficient to confer standing. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000). In evaluating the standing of a *qui tam* relator, the *Stevens* court concluded:

> There is no doubt, of course, that as to this portion of the recovery—the bounty he will receive if the suit is successful—a *qui tam* relator has a concrete private interest in the outcome of the suit. But the same might be said of someone who has placed a wager upon the outcome. An interest unrelated to injury in fact is insufficient to give a plaintiff standing. The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right. A *qui tam* relator has suffered no such invasion—indeed, the right he seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails . . . As we have held in another context, however, an interest that is merely a byproduct of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes.

*Id*. (internal quotations and citations omitted). In other words, the Supreme Court specifically rejected the argument that a plaintiff's potential bounty that could result from a litigation was sufficient to confer standing.

In addressing standing in the context of a claim brought pursuant to Section 3332, the Second Circuit concluded that "the denial of [plaintiff's] § 3332(a) right is insufficient" and that the plaintiff had not otherwise stated a sufficient injury or that any such injury was redressable. *See Zaleski v. Burns*, 606 F.3d 51, 52-53 (2d Cir. 2010). There, the plaintiff, a convicted felon, argued that his conviction was the result of a conspiracy to deprive him of his constitutional rights and he wanted information of this conspiracy presented to the grand jury. Despite plaintiff himself being a victim of this alleged conspiracy, the Second Circuit nonetheless doubted that plaintiff had standing due to an insufficient injury and the fact that "an indictment of the alleged conspirators will not likely redress his asserted injury." *Id*. The alleged injury and potential redressability in *Zaleski* were certainly less attenuated than Plaintiffs' alleged injury here. For these reasons, Plaintiffs have failed to allege an injury—let alone one that is concrete, particularized, actual, and imminent that can be redressed by a favorable decision.

### B. Section 3332 Does Not Provide a Private Right of Action

Even if Plaintiffs could demonstrate standing, which they cannot, Section 3332 does not offer a private right of action. The party seeking to imply a private right of action bears the burden to show that Congress intended to make one available. *See Suter v. Artist M.*, 503 U.S. 347, 363 (1992). The "judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Here, nothing in the text or structure of Section 3332(a) indicates that Congress intended there to be a private right of action. The statute does not contemplate any judicial relief or enforcement mechanism for noncompliance with Section 3332(a) and it is entirely silent on the issues of a private remedy and standing to pursue judicial enforcement. By contrast, when Congress has intended to create a private right of action, it has done so with clear, explicit language. *See, e.g.*, 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . .")." There is no such explicit right created by Section 3332 and there is nothing in the text or structure of Section 3332 to support inferring the existence of one.[2]

### C. Plaintiffs Fail to State a Claim on Which Mandamus Relief May Be Granted

"Mandamus . . . is a drastic and extraordinary remedy reserved for really extraordinary causes and should be granted only in the exercise of sound discretion. To prevail in an action for a writ of mandamus, a petitioner must show: (1) a clear right in the Petitioner to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Sprolling v. United States*, No. 16-cr-346 (PAC),

---

[2] While it is true that a lone case has found a plaintiff to have an enforceable interest under Section 3332, *see In re Grand Jury Application*, 617 F. Supp. 199 (S.D.N.Y. 1985), "all other courts to decide this question as to § 3332(a) appear to have held there is no such private right of action under these facts." *Morales v. U.S. Dist. Ct. for Southern Dist. of Florida*, 580 Fed. App'x 881, 886 n.6 (11th Cir. 2014). *See also Taitz v. Colvin*, No. 13-cv-1878 (ELH), 2014 WL 1918714, at *13 (D. Md. May 13, 2014) (holding that Section 3332 does not confer a private right of action) (collecting cases).

2019 WL 3764661, at *2 (S.D.N.Y. July 23, 2019) (internal citations and quotations omitted). Moreover, "the power of a district court to compel official action by mandatory order is limited to nondiscretionary, plainly defined, and purely ministerial duties." *Defeo v. Lapin*, No. 08-cv-7513 (RWS), 2009 WL 1788056, at *5 (S.D.N.Y. June 22, 2009) (citing *Work v. Rives*, 267 U.S. 175 (1925)). Plaintiffs' claim fails in multiple respects.

Here, there is no clear, plainly defined, ministerial duty. Rather, presenting evidence to a grand jury is something that requires a substantial degree of discretion. *See, e.g.*, *United States v. White*, 972 F.2d 16, 18 (2d Cir. 1992) ("[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor."); *United States v. Chanen*, 549 F.2d 1306, 1312-13 (9th Cir. 1977) ("[I]nitiating a criminal case by presenting evidence before the grand jury qualifies as an executive function within the exclusive prerogative of the Attorney General."); *Stimac v. Wieking*, 785 F. Supp. 2d 847, 850-52 (N.D. Cal. Mar. 29, 2011) ("[A]ny right provided in [Section 3332] must be weighed against prosecutorial discretion and the limits on judicial review of prosecutorial decision . . . I am unconvinced that the right to force a prosecutor to bring evidence before the grand jury is [ ] absolute . . . Prosecutorial resources are limited . . . prosecutorial discretion precludes the claims [plaintiff] raises against the U.S. Attorneys.").

## II. Access to Grand Jury Materials

Plaintiffs additionally seeks disclosure of records relating to any grand jury to which the United States Attorney has submitted information related to Plaintiffs' Amended Petition. Plaintiffs claim that ministerial records of the grand jury may be released without restriction. *See* Cmpl. at ¶ 55. Plaintiffs also argue that the Court has the inherent power to release non-ministerial records. Among the "special circumstances" Plaintiffs cite to justify disclosure is that "[g]iven the eighteen years that have passed since the crimes at issue, secrecy is not required to prevent the escape of those whose indictment may be contemplated." *Id*. at ¶¶ 60, 60(e).

As an initial matter, Plaintiffs simultaneously ask the Court to reach contradictory conclusion. First, that there are no secrecy issues related to any grand jury materials because eighteen years have elapsed since 2001, thus obviating any concerns that people implicated by indictments may escape. Yet, Plaintiffs also justify their standing to enforce Section 3332 on the ground that they could receive a bounty for the capture of terrorists. These two positions are incompatible. Rather, to the extent any such grand jury materials do exist, disclosure is not warranted. "It has long been recognized that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *United States v. Chambers*, No. 18-cr-00079 (KAD), 2019 WL 1014850, at *2 (D. Conn. Mar. 4, 2019) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw*., 441 U.S. 211, 218 (1979)). This is true regardless of whether the sought materials are ministerial or substantive. *See id* at *2-3. (rejecting argument that ministerial records are subject to a lesser degree of secrecy).

For the reasons stated herein, Plaintiffs' Complaint should be dismissed in its entirety. I thank the Court for its attention to this matter.[3]

---

[3] As required by the Court's individual rules, Defendants contacted Plaintiffs in advance of submitting this letter to ask if they consent to the relief sought herein. Plaintiffs do not consent.

Sincerely,

GEOFFREY S. BERMAN
United States Attorney of the
Southern District of New York

By:   /s/ Alexander J. Hogan
ALEXANDER J. HOGAN
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2799
Fax: (212) 637-2686
E-mail: alexander.hogan@usdoj.gov