Mick G. Harrison, Attorney at Law       John L. O'Kelly, Esq.
520 S. Walnut Street, #1147             127 Bengeyfield Drive
Bloomington, Indiana 47402            East Williston, New York 11596

February 12, 2020
<u>BY ECF</u>

Honorable Paul G. Gardephe, United States District Judge
Southern District of New York, Thurgood Marshall United States Courthouse
40 Foley Square, New York, New York 10007

Re:    *Lawyers' Committee, et al. v. William Barr, et al.*, 19 Civ. 8312 (PGG)

Dear Judge Gardephe:

      We write on behalf of Plaintiffs Lawyers' Committee For 9/11 Inquiry, Inc. ("Lawyers' Committee") and Richard Gage ("Gage") in response to the letter motion of Defendants which requests a pre-motion conference regarding Defendants' proposed motion to dismiss.

## I.    **Factual Background**

      On April 10, 2018, after much research and testimony from scientists, architects, and engineers, the Lawyers' Committee delivered to the United States Attorney for the Southern District of New York ("U.S. Attorney") their "Petition To Report Federal Crimes Concerning 9/11 To Special Grand Jury …" (hereafter "Petition") along with the extensive scientific and eye-witness testimony exhibits referenced in the Petition. The Lawyers' Committee requested that the U.S. Attorney present the Petition to a special grand jury pursuant to 18 U.S.C. § 3332(a). On July 30, 2018, the Lawyers' Committee delivered to the U.S. Attorney their Amended Petition and requested that the U.S. Attorney also present the information in the Amended Petition to a special grand jury pursuant to 18 U.S.C. § 3332(a).

      Plaintiffs' via their Amended Petition presented extensive evidence ignored by federal authorities that the World Trade Center (WTC) Twin Towers (WTC1 and WTC2) and the Salomon Brothers Building a.k.a. WTC Building 7 (WTC7) collapsed on September 11, 2001 (9/11) due to the detonation of pre-planted explosives and/or incendiaries. That evidence included: 1) A report in a peer-reviewed scientific journal of independent lab analysis of WTC dust samples showing the presence of high-tech explosives/incendiaries; 2) Testimony of numerous 9/11 First Responders who heard sounds of explosions and saw explosions on 9/11 at the WTC; 3) Testimony and scientific analysis by numerous architects, engineers, physicists, and chemists showing that the WTC Twin Towers and WTC Building 7 were brought down by use of explosives and incendiaries; 4) Expert analysis of seismic evidence showing that explosions occurred at the WTC towers on 9/11 prior to the airplane impacts, and prior to the building collapses; 5) Scientific reports and testimony documenting the presence of molten iron and extreme temperatures at Ground Zero, temperatures much higher than jet fuel and building contents fires could create; 6) Scientific documentation of the presence in the WTC dust of

previously molten iron microspheres impossible for jet fuel and office fires to create, but expected from the use of nanothermate; and 7) Scientific analysis and government reports confirming sulfidation and high temperature corrosion of the steel found in the rubble after the collapse of the WTC towers and WTC 7, a phenomenon not expected in a jet fuel fire and gravity driven collapse, but consistent with the use of nanothermate, a high-tech explosive/incendiary. This evidence is conclusive that explosive/incendiary devices that had been pre-placed at the WTC were detonated causing the complete collapse of the World Trade Center Twin Towers (and WTC7) on 9/11, substantially increasing the tragic loss of life.

On November 7, 2018, the U.S. Attorney's Office sent the Lawyers' Committee a letter stating (only) that the U.S. Attorney would comply with 18 U.S.C. § 3332(a) in regard to the Lawyers' Committee's petition submissions of April and July 2018. Lawyers' Committee representatives spoke with AUSA Michael Ferrara by telephone in June of 2019 and asked if he could provide the status of the U.S. Attorney's action on the Lawyers' Committee's Amended Petition or any additional information that might preclude the Lawyers' Committee from having to file an action for mandamus. AUSA Ferrara stated that, because of the secrecy requirements of Fed. R. Crim. P. 6(e), he could not provide any information beyond his November 7th letter.

## II.     Plaintiffs Have Standing

Plaintiffs have standing to bring their action. As this Court has noted:

> 18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to the plaintiffs, **and the breach of that duty gives the plaintiffs standing to seek its enforcement**.     … 18 U.S.C. § 3332(a) creates a right in every person to have information known by them concerning organized crime to be presented to the grand jury.

*In re Grand Jury Application*, 617 F.Supp. 199, 201, 206 (S.D.N.Y. 1985) (emphasis added).

The mission of the Lawyers' Committee, a non-profit corporation, is to promote transparency and accountability regarding the tragic events of 9/11. Examination of the evidence in the Amended Petition by a special grand jury would promote the Lawyers' Committee's mission. A special grand jury has the power not only to investigate and indict, which would promote the goal of accountability, but also to issue public reports regarding any government malfeasance discovered during the investigation, which would promote the goal of transparency.

Plaintiff Richard Gage is an experienced architect who has played a leading role in the independent multi-year investigation of the causes of the collapse of the WTC towers and WTC Building 7 on 9/11. Mr. Gage is the founder and President of the non-profit organization Architects & Engineers for 9/11 Truth. The Amended Petition included substantial testimony from Mr. Gage and his scientists, engineer, and architect colleagues. Mr. Gage signed on to the Lawyers' Committee's Petition after the initial submission of the Petition to the U.S. Attorney. His name, as a supporter of the Petition, was submitted along with approximately 2000 additional names to the U.S. Attorney in a supplement to the original Petition.

Plaintiff Lawyers' Committee has also submitted the evidence referenced in their Amended Petition to the State Department's "Rewards for Justice" program (RFJ). RFJ's goal is to bring international terrorists to justice and prevent acts of international terrorism against U.S. persons or property. Under the RFJ, the Secretary of State may authorize rewards (of millions of dollars) for information that leads to the arrest or conviction of anyone who plans, commits, or attempts international terrorist acts against U.S. persons or property. RFJ has paid more than $125 million to over 80 individuals for information regarding international terrorist attacks.

The District of Columbia Circuit has recognized that an applicant for a bounty may have standing to compel performance by the U.S. Attorney of the duty in 18 U.S.C. § 3332(a). "We emphasize that Mohwish lacks standing because he has failed to identify any cognizable injury, not because § 3332 is inherently unenforceable … ; for example, a person who would be entitled to a bounty if a prosecution were initiated might well have standing. *Cf. Lujan*, 504 U.S. at 573, 112 S.Ct. at 2143." *Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997).

Defendants in their letter motion assert that the Second Circuit decision in *Zaleski v. Burns*, 606 F.3d 51, 52 (2d Cir. 2010) supports their lack of standing argument. But in *Zaleski*, the *pro se* plaintiff there was found to lack standing because he sought direct access to the grand jury and had never asked the United States Attorney to submit his information to a grand jury, a "fatal" standing omission. These facts are completely distinguishable from Plaintiffs case here.

## III.     Plaintiffs are Exercising Two Separate Statutory Rights to Sue

Plaintiffs have a right to bring this action pursuant to the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedures Act (APA), 5 U.S.C. §§ 702, 706. Plaintiffs do not rely on 18 U.S.C. § 3332(a) for their right of action, contrary to Defendants implication. Both the APA and the mandamus statute provide Plaintiffs a right to enforce the 18 U.S.C. § 3332(a) duty.

## IV.     Plaintiffs Have Adequately Stated Claims Upon Which Relief May Be Granted

The Complaint clearly contains sufficient allegations to state a claim for mandamus relief under 28 U.S.C. § 1361. To grant a mandamus request, a court must find that three requirements are satisfied: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant; and (3) no other adequate remedy available. *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972); cert. denied, 411 U.S. 918 (1973); *In re Grand Jury Application*, 617 F.Supp. 199 (S.D.N.Y. 1985). As this Court has held, 18 U.S.C. § 3332(a) establishes the first of these mandamus requirements, a clear right to enforce the duty. "18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to the plaintiffs, and the breach of that duty gives the plaintiffs standing to seek its enforcement." *In re Grand Jury Application*, 617 F.Supp. 199, 201, 206 (S.D.N.Y. 1985). This Court also held the second element, a plainly defined peremptory duty, as established by 18 U.S.C. § 3332(a).

18 U.S.C. § 3332(a) creates a duty on the part of the United States
Attorney that runs to the plaintiffs … To argue, as the government does … that

3

the prosecutor has total discretion in deciding what information to present to the grand jury flies in the face of the Act's legislative history. … Thus both the language of 18 U.S.C. § 3332(a) and its legislative history indicate that Congress intended to remove the prosecutor's discretion in deciding whether to present information to the grand jury.

*In re Grand Jury Application*, 617 F.Supp. 199, 201, 205-06 (S.D.N.Y. 1985). The Department of Justice has recognized this duty. U.S. Attorneys' Manual, Criminal Resource Manual, § 158.

Defendants argue that 18 U.S.C. § 3332(a) does not impose a mandatory duty, in direct contradiction to this Court's holding in *In re Grand Jury Application*, 617 F.Supp. 199, 201, 205-06 (S.D.N.Y. 1985). The D.C. Circuit has also recognized that 18 U.S.C. § 3332(a) imposes a mandatory duty on the U.S. Attorney. *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997).

The third mandamus requirement, that Plaintiffs have no other adequate remedy, is satisfied here as there is no other legal vehicle for compelling the U.S. Attorney to provide Plaintiffs' Amended Petition to a special grand jury, other than, possibly, an APA claim. Plaintiffs included an APA claim in Complaint Count II. The APA allows claims for mandamus type relief. 5 U.S.C. § 702. In an action under the APA, "The reviewing court shall--(1) compel agency action unlawfully withheld or unreasonably delayed … ." 5 U.S.C. § 706.

Plaintiffs assert in Count III of the Complaint a common law right, a First Amendment right, and a right under Fed. R. Crim. P. 6(e) to petition the court for access to certain grand jury related records. The Supreme Court has recognized a general right to inspect and copy public records and that the interest necessary to support the issuance of an order compelling access may be simply a citizen's (or the media's) desire to keep a watchful eye on the workings of government. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). The "importance of public access to judicial records and documents cannot be belittled." *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 780-81, 784 (9th Cir. 1982) (reversing a decision of the district court that appellants lacked standing to seek access to grand jury ministerial records). Members of the public have a right, subject to the rule of grand jury secrecy, of access to grand jury ministerial records, and "[a]bsent specific and substantial reasons for a refusal, such access should not be denied." *Id*. Defendants rely on *United States v. Chambers*, 2019 WL 1014850 (D. Connecticut March 4, 2019) for the proposition that grand jury ministerial records require the same secrecy as proceedings before the grand jury. The Second Circuit has yet to decide this question. *See* Chambers at *2.

The circumstances here warrant at least partial disclosure. These circumstances include: 1) No significant government interest in secrecy regarding the limited disclosures sought given that the submission of the Amended Petition and the U.S. Attorney's agreement to comply with 18 U.S.C. § 3332(a) have been publicly disclosed; 2) The matters involved are of unusual public importance; 3) It would promote public understanding of and confidence in government to disclose that the evidence submitted by Plaintiffs has been presented to a grand jury; 4) Secrecy is not required to prevent the escape of suspects some 18 years after the fact; 5) The limited disclosure requested would not interfere with grand jury deliberations or put grand jurors at risk;

and 6) The limited disclosure requested does not require release of names, and would not result in a failure to protect an innocent accused. It is important to note that these secrecy factors, discussed in *In re Grand Jury Subpoena*, 103 F.3d 234, 237 (2d Cir. 1996), and in *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 781-82 (9th Cir. 1982), regard *active* grand jury proceedings. The need for secrecy may be largely reduced where grand jury proceedings are not active. *See, e.g., In re Grand Jury Subpoena*, 103 F.3d 234, 237, 240 (2d Cir. 1996).

Defendants should, consistent with the above, be able to disclose to Plaintiffs the fact that the Amended Petition has *not* been submitted to any grand jury, which disclosure would be sufficient to establish that Plaintiffs' mandamus claims are not moot (and would moot Plaintiffs' Count III disclosure claim). Even where a proceeding falls under Rule 6(e), the presumption of secrecy is rebuttable. *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996). That secrecy presumption should not be invoked at all, and therefore need not be rebutted by Plaintiffs, simply to find out the Amended Petition has *not* been submitted to a grand jury.

If Plaintiffs' Amended Petition *has* been submitted to a grand jury, Plaintiffs can make a showing of a particularized need for disclosure of sufficient ministerial records to show that the grand jury inquiry into Plaintiffs' Amended Petition is active. Plaintiff Lawyers' Committee recently had an action dismissed by the U.S. District Court for the District of Columbia (soon to be appealed) on standing grounds. That action sought to compel the FBI and DOJ to comply with a 2013-2014 Congressional mandate to perform an independent evaluation of all evidence related to 9/11 not assessed by the original 9/11 Commission (in 2004). In rejecting one of Plaintiffs' standing arguments, relating to Plaintiffs' application for a reward under the Department of State's RFJ program, the District Court there held that it was "speculative" that Plaintiffs might receive such an award. *See Lawyers' Committee for 9/11 Inquiry, Inc. v. Wray*, 2020 WL 42845, at *6 (D.D.C. 2020). The Defendants in their letter motion here make the same "speculative" argument. However, the extensive scientific and First Responder eye-witness evidence submitted in Plaintiffs' Amended Petition and to the RFJ program is not speculative but dispositive in proving terrorism crimes. The existence of a grand jury inquiry into that *dispositive* evidence, given the duties imposed by law on grand juries, creates a non-speculative scenario where Plaintiffs would be likely to receive a RFJ reward. The fact that such an outcome is not certain does not make it speculative. There is no harm to the government's interests in making a limited disclosure that a grand jury proceeding on the Amended Petition is active, given that Defendants gave Plaintiffs a public letter stating that they would comply with 28 U.S.C. § 3332(a).

## V.      Conclusion

If a limited disclosure of grand jury records is allowed sufficient to show that Plaintiffs' Amended Petition has in fact been submitted in good faith to a special grand jury, then Plaintiffs' mandamus relief counts would be moot and could be voluntarily dismissed (and the remaining disclosure count would be resolved). If not, Plaintiffs reserve the right to amend their complaint pursuant to Fed. R. Civ. P. 15 to add standing fact allegations, to add plaintiffs including family members of 9/11 victims, and to supplement the statement of their claims in response to any motion to dismiss. Plaintiffs' Complaint should not be dismissed. Plaintiffs note that a mediation could be successful given the limited disclosure required. We thank the Court for its attention.

Sincerely,

/s/Mick G. Harrison                         /s/ John L. O'Kelly
Mick G. Harrison, Attorney at Law           John L. O'Kelly, Esq.
520 S. Walnut Street, #1147                 127 Bengeyfield Drive
Bloomington, Indiana 47402                  East Williston, New York 11596
Phone: 812-361-6220                         Phone 516-248-3338
Fax: 812-233-3135                           Fax- 516-742-0203
E-mail: mickharrisonesq@gmail.com           E-mail: jokelly@optonline.net

6