UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWYERS COMMITTEE FOR 9/11
INQUIRY, INC.; ARCHITECTS AND
ENGINEERS FOR 9/11 TRUTH; JEANNE
EVANS; RICHARD GAGE;
COMISSIONER CHRISTOPHER GIOIA;
DIANA HETZEL; ROBERT MCILVAINE;
and MICHAEL J. O'KELLY,

                              Plaintiffs,

                - against -


WILLIAM P. BARR, Attorney General of
the United States, GEOFFREY BERMAN,
United States Attorney for the Southern
District of New York, and U.S.
DEPARTMENT OF JUSTICE,

                              Defendants.

**<u>ORDER</u>**

19 Civ. 8312 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiffs seek an order compelling the Attorney General of the

United States and the United States Attorney for the Southern District of New York,[1] pursuant to

either a writ of mandamus or the Administrative Procedure Act ("APA"), to present certain

information to a federal grand jury, as provided in 18 U.S.C. § 3332(a).  Plaintiffs also seek the

release of certain grand jury records and injunctive relief for alleged violations of their First

Amendment rights.  (Am. Cmplt. (Dkt. No. 20))

----

[1]  Merrick Garland is now the Attorney General of the United States, and he is automatically
substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).  Audrey Strauss is
the Acting United States Attorney for the Southern District of New York, and she is likewise
automatically substituted as a defendant.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 28)  For the reasons stated below, Defendants' motion will be granted.

## **BACKGROUND**

Plaintiff Lawyers' Committee for 9/11 Inquiry ("Lawyers' Committee") is a non-profit corporation committed to "promote transparency and accountability regarding the tragic events of September 11, 2001."  (Am. Cmplt. (Dkt. No. 20) ¶ 12)  The Lawyers' Committee believes that the destruction of three buildings at the World Trade Center ("WTC") on September 11, 2001 ("9/11") was the result of the detonation of "pre-placed" "explosives and/or incendiaries."  (Id. ¶¶ 54-55)  According to the Lawyers' Committee, "as a matter of science, as a matter of logic, and as a matter of law," the evidence "is conclusive that explosive and/or incendiary devices that had been pre-placed at the WTC were detonated causing the complete collapse of the . . . Twin Towers on 9/11."  (Id. ¶ 55)  According to the Lawyers' Committee, "the family members of the victims of the tragic crimes of 9/11 have a compelling right to know the full truth of what happened to their loved ones . . . ."  (Id. ¶ 12)

On April 10, 2018, the Lawyers' Committee delivered a petition to the United States Attorney's Office for the Southern District of New York ("USAO") setting forth "factual information and evidence . . . regarding certain federal crimes . . . related to the attacks on the [WTC]."  (Id. ¶¶ 14, 50)  The Lawyers' Committee delivered an amended petition on July 30, 2018.  (Id. ¶¶ 16, 54)  Both petitions include information that the Lawyers' Committee believes supports its allegations.  (Id. ¶¶ 15-16)  In each petition, the Lawyers' Committee asks the United States Attorney to empanel a grand jury to consider this information, pursuant to 18 U.S.C. § 3332(a).  (Id. ¶¶ 51-53, 56)  In a November 7, 2018 letter, the USAO assured the Lawyers'

Committee that the USAO would comply with its obligations under 18 U.S.C. § 3332(a).  (Id. ¶ 59)

In June 2019, the Lawyers' Committee contacted the USAO to inquire about the status of the petitions.  The USAO provided no further information to the Lawyers' Committee, citing the secrecy requirements of Federal Rule of Criminal Procedure Rule 6(e).  (Id. ¶ 60)

On August 30, 2019, the Lawyers' Committee submitted the same information set forth in the petitions to the United States Department of State, as part of an application to the State Department's "Rewards for Justice" program, which is a Counter-Terrorism Rewards Program that "offers rewards or bounties for information leading to the arrest of persons engaged in terrorism."  (Id. ¶¶ 61-63)

The Amended Complaint further alleges that the Department of Justice ("DOJ") funds "local and state terrorism programs that attempt to discredit" the Lawyers' Committee and Plaintiff Architects and Engineers for 9/11 Truth ("Architects") by circulating communications that try to "convince citizens that organizations that question the government's explanation for the 9/11 attacks . . . are to be treated as suspected terrorists."  (Id. ¶ 66)  Plaintiffs claim that these alleged DOJ-funded communications hamper their recruitment, fundraising, and communication efforts, and are "potentially defamatory."  (Id. ¶¶ 67-68)  In support of their claims, Plaintiffs have attached as an exhibit to the Amended Complaint a flyer issued by the Columbus, Ohio Division of Police, Homeland Security Section, Terrorism Early Warning Unit, entitled "Communities Against Terrorism."  The flyer lists as an "[a]ttitude [i]ndicator[]" that citizens should "[c]onsider [s]uspicious" any "[c]onspiracy theories about Westerners (e.g. the CIA arranged for 9/11 to legitimize the invasion of foreign lands)."  (Am. Cmplt., Ex. 9 (Ohio Police Flyer) (Dkt. No. 20-9) at 1).

Plaintiff Richard Gage is an architect who signed the Lawyers' Committee petition to the USAO.  He is the founder and president of Plaintiff Architects & Engineers for 9/11 Truth, a non-profit organization whose mission is to "establish[] the truth about the events of September 11, 2001."  (Am. Cmplt. (Dkt. No. 20) ¶¶ 17, 19)  Architects "authorized the Lawyers' Committee to add its name as an organization to the list" of organizations that signed the petition to the USAO, and joined the Lawyers' Committee's Rewards for Justice application. (Id. ¶¶ 21-22)

Plaintiff Jeanne Evans' brother, Robert Evans, was an FDNY firefighter who died alongside members of Engine 33 and Ladder 9 responding to the WTC attack.  (Id. ¶ 23) Plaintiff Diana Hetzel's husband, Thomas J. Hetzel, was a firefighter with Ladder 13, who died inside the North Tower.  (Id. ¶¶ 33-34)  Plaintiff Robert McIlvaine lost his son, Bobby McIlvaine, who was at the WTC for a banking conference on the morning of 9/11.  (Id. ¶¶ 37-38)

Plaintiff Christopher Gioia, is the Fire Commissioner of the Franklin Square and Munson Fire Department, and was among the first responders on 9/11.  (Id. ¶ 28)  Several of Gioia's friends and co-workers from the Franklin Square and Munson Fire Department were killed on 9/11, and several others are battling cancer as a result of exposure to deadly toxins at the WTC site.  (Id. ¶¶ 29-30)  Plaintiff Michael J. O'Kelly was a member of the FDNY who spent a month at the WTC site engaged in rescue and recovery efforts.  He subsequently developed respiratory problems, including asthma, from inhaling toxins at the WTC site.  (Id. ¶¶ 43-45)

Evans, Gioia, and McIlvaine authorized the Lawyers' Committee to add their names to the petition sent to the USAO.  (Id. ¶¶ 27, 32, 41)  Gage, McIlvaine, and O'Kelly have submitted declarations in support of the Amended Complaint's claim that the 9/11 tragedy was

the result of explosives planted at the WTC site.  (Gage Decl. (Dkt. No. 20-2); McIlvaine Decl. (Dkt. No. 20-6); O'Kelly Decl. (Dkt. No. 20-7))  Evans, Gioia, and Hetzel have submitted declarations in support of the Lawyers' Committee petition to the USAO.  (Evans Decl. (Dkt. No. 20-3); Gioia Decl. (Dkt. No. 20-4); Hetzel Decl. (Dkt. No. 20-5))

     The Amended Complaint asserts four claims:  (1) a request to disclose grand jury records pursuant to common law rights, the Court's inherent authority, the First Amendment, and Rule 6 of the Federal Rules of Criminal Procedure (Am. Cmplt. (Dkt. No. 20) ¶¶ 69-83); (2) violation of Plaintiffs' First Amendment right to petition for redress and request for injunctive relief (id. ¶¶ 84-91); (3) mandamus relief to compel presentation of the amended petition to a grand jury pursuant to 28 U.S.C. § 1361 (id. ¶¶ 92-98); and (4) mandamus relief to compel presentation of the amended petition to a grand jury pursuant to the APA, 5 U.S.C. § 706(1).  (Id. ¶¶ 99-102).

     On May 8, 2020, Defendants moved to dismiss.  (Dkt. No. 28)  Defendants contend that Plaintiffs lack standing to compel the USAO to present information to the grand jury.  (Def. Br. (Dkt. No. 29) at 10)[2]  Defendants further argue that, even if Plaintiffs had standing, they have not stated a claim under the First Amendment, the APA or the mandamus statute for the relief they seek – an order compelling the USAO to present certain evidence to a grand jury.  (Id. at 23; Def. Reply Br. (Dkt. No. 30) at 13)  Defendants also contend that Plaintiffs are not entitled to release of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure.  (Def. Br. (Dkt. No. 29) at 25-27)

---

[2]  The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)); see also Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). And "[u]nder Rule 12(b)(1), even 'a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" Castillo v. Rice, 581 F. Supp. 2d 468, 471 (S.D.N.Y. 2008) (quoting Frisone v. Pepsico Inc., 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005)).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170

(2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing Makarova, 201 F.3d at 113)).  In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03 Civ. 597 RWS, 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

"A motion to dismiss a complaint for lack of standing is properly brought pursuant to Rule 12(b)(1) . . . because it relates to the court's subject matter jurisdiction." ED Capital, LLC v. Bloomfield Inv. Res. Corp., 155 F. Supp. 3d 434, 446 (S.D.N.Y. 2016), aff'd in rel. part, 660 F. App'x 27 (2d Cir. 2016).

**B.** **Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a). To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id. at 570.

## II.    ANALYSIS

### A.    Standing

#### 1.    Applicable Law

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (internal quotation marks and citation omitted). To establish constitutional standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The requisite "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). Where a statute creates private rights, the violation of those rights may constitute an injury in fact sufficient to confer standing. See Spokeo, 136 S. Ct. at 1549. Conversely, a plaintiff lacks standing to assert a claim under a statute that does not afford a private right of action. See Naylor v. Case & McGrath, Inc., 585 F.2d 557, 561 (2d Cir. 1978).

The plaintiff bears the burden of establishing the elements of standing, Spokeo, 136 S. Ct. at 1547 (citation omitted), and, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

### 2.   Standing to Bring the Amended Complaint's Second, Third, and Fourth Causes of Action

Title 18, United States Code, Section 3332(a) provides as follows:

It shall be the duty of each such grand jury impaneled within any judicial district to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by . . . any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

18 U.S.C. § 3332(a).

In their Second Cause of Action, Plaintiffs contend that Defendants' refusal to present their amended petition to a grand jury "constitutes not only a failure to perform the

mandatory duties imposed on the U.S. Attorney by 18 U.S.C. § 3332(a), but also constitutes a violation of Plaintiffs' First Amendment Right to Petition (the grand jury) for Redress."[3]  (Am. Cmplt. (Dkt. No. 20) ¶ 89)

The Third Cause of Action alleges, "on information and belief, that the United States Attorney here has, unlawfully withheld, in violation of his clear duty pursuant to 18 U.S.C. § 3332(a), the action requested by Plaintiffs" to deliver their amended petition to a grand jury.  (Id. ¶ 97)  Plaintiffs seek a writ of mandamus to compel the USAO to comply with its obligations under 18 U.S.C. § 3332(a).  (Id. ¶¶ 92-98)

The Fourth Cause of Action alleges that the USAO's failure to deliver the amended petition to a grand jury violates 18 U.S.C. § 3332(a), and that Plaintiffs' rights under Section 3332(a) are enforceable under the APA pursuant to a "claim[] for mandamus[-]type relief."  (Id. ¶¶ 99-102)

As to all three claims, Plaintiffs request the same injunctive relief:  that the Court "require the U.S. Attorney to honor the Plaintiffs' rights to petition the grand jury (through the U.S. Attorney pursuant to 18 U.S.C. § 3332(a))."  (Id. ¶ 91; see also id. ¶ 98 (asking for a writ of mandamus compelling the same); ¶ 102 ("Plaintiffs are entitled to an order from this Court mandating the United States Attorney to provide Plaintiffs' Amended Petition and Exhibits to a special grand jury and inform the special grand jury of the Plaintiffs' identity in order to remedy agency action unreasonably delayed or withheld and that is arbitrary and capricious."))

---

[3]  To the extent that Plaintiffs argue that violation of their First Amendment right to petition the Government is a basis for standing in and of itself, Plaintiffs cite no case law that establishes a right under the First Amendment distinct from Section 3332(a).  (Pltf. Opp. (Dkt. No. 30) at 15-16)  Although Plaintiffs contend that "being heard [is] an end in itself" (id. at 15), this argument is indistinguishable from the standing arguments Plaintiffs make with respect to their APA and mandamus claims.  As such, the standing inquiry for each of these three claims will be treated as coextensive.

In sum, the Second, Third, and Fourth Causes of Action all seek to compel the

USAO, pursuant to the following language in Section 3332(a), to provide the amended petition

to a grand jury:

> [A]lleged offenses may be brought to the attention of the grand jury by . . . any attorney appearing on behalf of the United States for the presentation of evidence.  Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

18 U.S.C. § 3332(a).

The Second Circuit has held, however, that "the denial of [a] § 3332(a) right is

insufficient" to establish standing.  Zaleski v. Burns, 606 F.3d 51, 52 (2d Cir. 2010) (per curiam).

In Zaleski, an inmate alleged that there existed a "vast . . . conspiracy to deny criminal

defendants their constitutional rights," and sought to present his allegations to a grand jury

pursuant to Section 3332(a).  Id.  The Second Circuit held that the inmate lacked standing to

pursue such an application.  Id. at 52-53.

Plaintiffs attempt to distinguish Zaleski by arguing that – unlike the inmate

plaintiff in that case – they "seek only indirect access to the grand jury," and "have explicitly

requested" that the USAO submit their amended petition to a grand jury.  (Pltf. Opp. (Dkt. No.

30) at 20)  But Zaleski states that "even had" plaintiff "requested that the Southern District U.S.

Attorney's Office present his information to a grand jury," he would still not have standing.

Zaleski, 606 F.3d at 52.[4]  In sum, under Zaleski, the USAO's failure to provide the amended

---

[4]  Other Circuits agree that a private plaintiff "lacks standing to force presentation of his alleged evidence to a grand jury under 18 U.S.C. § 3332(a)."  Hawkins v. Lynch, 626 F. App'x 1, 2 (D.C. Cir. 2015); see also Morales v. U.S. Dist. Court for S. Dist. of Fla., 580 F. App'x 881, 886 (11th Cir. 2014) ("The U.S. Attorney's denial of a request to present information [to a grand jury] does not invade any 'concrete' and 'particularized' interest of [plaintiff] or affect [plaintiff] any differently than it affects everyone else."); Banks v. Buchanan, 336 F. App'x 122, 123 (3d Cir. 2009) ("[Plaintiff] is correct that § 3332 requires the U.S. Attorney to inform the grand jury

petition to a grand jury does not provide Plaintiffs with standing to pursue their Second, Third, and Fourth Causes of Action.[5]

In addition to the alleged violation of their rights under Section 3332(a), Plaintiffs cite other injuries that they contend are sufficient to establish standing.  As discussed above, in order for these alleged injuries to provide a basis for standing, Plaintiffs must show that they are "(a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted).  Plaintiffs do not meet this standard.

As an initial matter, Plaintiffs contend that the first responders among them – Gioia and O'Kelly – "have an interest in avoiding having themselves, their colleagues, and their family members being again put in danger of being killed and injured by terrorists, foreign or domestic, using explosives to destroy buildings during emergency response operations."  (Pltf. Opp. (Dkt. No. 30) at 22)  Plaintiffs further suggest that anyone living in, or related to someone living in or near New York City – such as Plaintiffs Hetzel and Evans – has a unique interest in preventing terrorist attacks, as "New York City is a prime target" for such attacks.  (Pltf. Opp. (Dkt. No. 30) at 23)

---

of information provided by 'any person' about an 'offense[ ] against the criminal laws of the United States.'  It does not, however, confer standing upon [Plaintiff] to enforce the U.S. Attorney's obligation, as [Plaintiff's] interest in the prosecution of [another] is not a legally protected interest.").

[5]  Plaintiffs also cite to In re Grand Jury Application, 617 F. Supp. 199, 201 (S.D.N.Y. 1985) (see Pltf. Opp. (Dkt. No. 30) at 15), which appears to be the only case that has held that "18 U.S.C. § 3332(a) creates a duty on the part of the United States Attorney that runs to [a private party], and [that] the breach of that duty gives [that private party] standing to seek its enforcement."  As a result of the Second Circuit's contrary holding in Zaleski, In re Grand Jury Application is no longer good law.

"This claimed harm relies on multiple conjectural leaps, most significantly its central assumption that the . . . Plaintiffs will be among the victims of an as-yet unknown terrorist attack by independent actors not before the court."  Cohen v. Facebook, Inc., 252 F. Supp. 3d 140, 150 (E.D.N.Y. 2017), aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc., 934 F.3d 53 (2d Cir. 2019).  Plaintiffs have not shown that they "in particular are at any 'substantial' or 'certainly impending' risk of future harm." Id. (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)) (emphasis in Cohen).  And courts have ruled that Plaintiffs who cite no more than "a general risk of harm to residents of [New York City]" do not have standing. Id.  A plaintiff must instead allege that he or she "'specifically will be the target of any future, let alone imminent, terrorist attack.'" Id. (citing Tomsha v. Gen. Serv. Admin., 15-cv-7326 (AJN), 2016 WL 3538380, at *2 (S.D.N.Y. June 21, 2016)) (emphasis in Tomsha).  Nor is a fear of future attacks sufficient to justify standing, as "allegations of a subjective fear are not an adequate substitute for a claim of specific present objective harm or threat of a specific future harm." Id. at 151 (quotation marks, alteration, and citation omitted).

Plaintiffs also assert that their application for a reward from the State Department's Rewards for Justice program gives them standing.  (Am. Cmplt. (Dkt. No. 20) ¶¶ 61-65; Pltf. Opp. (Dkt. No. 30) at 7, 12)  Under this program, someone who provides "actionable information" may be eligible for a reward if "a terrorist involved in either the planning or execution of an attack against U.S. persons and/or property is arrested or convicted as a result of [that] information." (Id. ¶ 65)  Plaintiffs argue that – were the amended petition presented to a grand jury – they "would have a reasonable probability of receiving a RFJ reward."  (Pltf. Opp. (Dkt. No. 30) at 12)  In arguing that the reward program provides a basis for standing, Plaintiffs cite Sargeant v. Dixon, 130 F.3d 1067, 1070 (D.C. Cir. 1997), which held

that a litigant attempting to enforce Section 3332 "might well have standing" if they "would be entitled to a bounty if a prosecution were initiated."

The Supreme Court has rejected the notion that a plaintiff's potential bounty or reward that could result from litigation provides a basis for standing.  In <u>Vermont Agency of Natural Resources v. United States ex. rel. Stevens</u>, a <u>qui tam</u> relator argued that the bounty he would receive if a False Claims Act lawsuit were successful could constitute an injury in fact sufficient to establish standing.  529 U.S. 765, 772 (2000).  In rejecting this argument, the Supreme Court ruled that an injury in fact "must consist of obtaining compensation for, or preventing, the violation of a legally protected right. . . . [whereas] the 'right' [the <u>qui tam</u> relator] seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails."  <u>Id.</u> at 772-73 (citations omitted).  Because an interest in a financial reward was "merely a 'byproduct' of the suit itself[, it] cannot give rise to a cognizable injury in fact for Article III standing purposes."  <u>Id.</u> at 773.

Here, any potential reward Plaintiffs might receive for information set forth in the amended petition is too speculative and attenuated an interest to give rise to an injury in fact for standing purposes.

Plaintiffs attempt to distinguish <u>Vermont Agency of Natural Resources</u> by stating that – unlike a <u>qui tam</u> lawsuit under the False Claims Act – Plaintiffs here "are not simply, or primarily, seeking to obtain some kind of financial windfall," but rather "seek to prevent future terrorist crimes from being committed, including against them."  (Pltf. Opp. (Dkt. No. 30) at 25) For the reasons stated above, neither the potential financial reward from the Rewards for Justice program nor the prevention of future terrorist crimes provides a sufficient basis for standing.

The Lawyers' Committee and Architects also assert that they have suffered harm from DOJ-funded communications, such as the Columbus, Ohio police flyer.  According to Plaintiffs, the Ohio flyer "reflects efforts to convince citizens that organizations that question the government's explanation for the 9/11 attacks in any manner that would suggest that 'Westerners' could have been involved are to be treated as suspected terrorists."  (Id. at 26; see also Am. Cmplt. (Dkt. No. 20) ¶¶ 66-68; Ohio Police Flyer (Dkt. No. 20-9) at 1)  Plaintiffs contend that such communications are "potentially defamatory," and "significantly undercut the ability of [these] nonprofits . . . to recruit volunteers and receive financial support, i.e. survive as a nonprofit, but also substantially impede efforts of the organizational plaintiffs to educate the public regarding 9/11 evidence."  (Am. Cmplt. (Dkt. No. 20) ¶ 67)

As an initial matter, the Ohio flyer does not reference the Lawyers' Committee or Architects in any way; accordingly, it is not plausible that the flyer defamed these organizations or "undercut" their efforts.  Even if it had, "[c]laiming reputational harm is not an exception or loophole that excuses litigants from satisfying Article III's injury criteria.  The issue, as with any alleged harm, is whether it is also 'concrete and particularized,' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.'"  Floyd v. City of New York, 302 F.R.D. 69, 119 (S.D.N.Y.), aff'd in part, appeal dismissed in part, 770 F.3d 1051 (2d Cir. 2014) (citation omitted).  The alleged harm to these organizations is purely hypothetical and too abstract to constitute an injury in fact.[6]

---

[6]  The Lawyers' Committee and Architects also contend that they have organizational standing based on "[t]he mission of the Lawyers' Committee . . . to promote transparency and accountability regarding the tragic events of September 11, 2001," and Architects' mission to "establish[] the truth about the events of September 11, 2001."  (Am. Cmplt. (Dkt. No. 20) ¶¶ 12-13, 19; see also Pltf. Opp. (Dkt. No. 30) at 7)  The alleged mission of these organizations is not sufficient to confer standing.  In Sierra Club v. Morton, the Supreme Court ruled that "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the

Plaintiffs also contend that Plaintiff McIlvaine has a personal interest in obtaining closure concerning his son's death, and that this interest is served by publicly disclosing "the events of 9/11 and possibly . . . criminal conduct or government malfeasance, misfeasance or non-feasance not previously known by the public."  (Pltf. Opp. (Dkt. No. 30) at 27)  But "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Accordingly, McIlvaine does not have standing to compel the USAO to present evidence to a federal grand jury.

Plaintiffs contend that Plaintiff Gage, as an architect, has a special interest in avoiding "unnecessary expense and effort to design and construct (and fund) high-rise buildings to meet a perceived building vulnerability to fire" that Plaintiffs contend "does not exist" based on their evidence that the WTC was destroyed by explosives and not fire.  (Pltf. Opp. (Dkt. No. 30) at 26)  Gage's alleged interest in avoiding unnecessary business expense is too attenuated and hypothetical to afford him standing.

Because Plaintiffs have not demonstrated that they have Article III standing to pursue the Second, Third, and Fourth Causes of Action, these claims will be dismissed.[7]

## B.   Whether the First Cause of Action States a Claim

In the First Cause of Action, Plaintiffs seek an order directing the Government to "release to Plaintiffs all substantive and ministerial records of any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' [petitions] to the U.S. Attorney . . . or

---

organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'"  405 U.S. 727, 739 (1972).  Accordingly, the interest of the Lawyers' Committee and Architects in promoting the organizations' goals are not cognizable injuries in fact for purposes of standing.

[7]  Because Plaintiffs do not have standing to pursue the claims set forth in the Second, Third, and Fourth Causes of Action, the Court does not reach Defendants' argument that Plaintiffs have not stated a claim under the First Amendment, the mandamus statute, or the APA.  (See Def. Br. (Dkt. No. 29) at 22 n.3, 23-25)

such subset of such records as the law may allow to be released."  (Am. Cmplt. (Dkt. No. 20)

¶ 80)  Defendants have moved to dismiss, arguing that the First Cause of Action fails to state a

claim.  (Def. Br. (Dkt. No. 29) at 25)

      1.     **Applicable Law**

The Supreme Court has "consistently . . . recognized that the proper functioning

of our grand jury system depends upon the secrecy of grand jury proceedings."  Douglas Oil Co.

of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979).  While "courts have been reluctant to lift

unnecessarily the veil of secrecy from the grand jury[,] . . . in some situations justice may

demand that discrete portions" of the record before the grand jury be disclosed to prevent a

possible injustice.  Id. at 219-221.  The Supreme Court has instructed that "disclosure is

appropriate only in those cases where the need for it outweighs the public interest in secrecy, and

that the burden of demonstrating this balance rests upon the private party seeking disclosure."

Id. at 223.

Accordingly, the general rule is that grand jury proceedings remain secret, unless

the party requesting disclosure satisfies one of the exceptions set forth in Rule 6(e) of the Federal

Rules of Criminal Procedure.  Rule 6(e) provides that the district court "may authorize disclosure

. . . of a grand-jury matter"

    (i)     preliminarily to or in connection with a judicial proceeding;

    (ii)    at the request of a defendant who shows that a ground may exist to dismiss the
          indictment because of a matter that occurred before the grand jury;

    (iii)   at the request of the government, when sought by a foreign court or prosecutor for
          use in an official criminal investigation;

    (iv)   at the request of the government if it shows that the matter may disclose a
          violation of State, Indian tribal, or foreign criminal law, as long as the disclosure
          is to an appropriate state, state-subdivision, Indian tribal, or foreign government
          official for the purpose of enforcing that law; or

> (v)    at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Fed. R. Crim. P. 6(e)(3)(E).

"The Supreme Court has fashioned a tripartite analysis to guide lower courts, explaining that '[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" Frederick v. New York City, No. 11 CIV. 469 JPO, 2012 WL 4947806, at *7 (S.D.N.Y. Oct. 11, 2012) (quoting Douglas Oil, 441 U.S. at 222). "In other words, to unseal grand jury records the parties must prove a 'particularized need.'" Id. (quoting U.S. v. Procter & Gamble Co., 356 U.S. 677, 683 (1958)).

The Second Circuit "has recognized that there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of [Rule 6(e)]." In re Petition of Craig, 131 F.3d 99, 102 (2d Cir. 1997). Courts consider the following "non-exhaustive list of factors . . . when confronted with these highly discretionary and fact-sensitive 'special circumstances' motions":

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material – either permissibly or impermissibly – has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

Id. at 106.

"The burden of demonstrating that the need for disclosure is greater than the public interest in secrecy is a heavy one, and it rests with the party seeking disclosure." Del Cole v. Rice, No. CV115138MKBWDW, 2013 WL 12316374, at *2 (E.D.N.Y. Nov. 6, 2013) (citation omitted).  "Thus, a party seeking the disclosure of grand jury minutes must make an overall strong showing of 'particularized need' for those materials.  Id. (citing U.S. v. Sells Engineering, Inc., 463 U.S. 418, 443 (1983)); accord United States v. Calk, No. 19 CR. 366 (LGS), 2020 WL 3577903, at *10 (S.D.N.Y. July 1, 2020).  "[I]n deciding whether to make public the ordinarily secret proceedings of a grand jury investigation," a court engages in "one of the broadest and most sensitive exercises of careful judgment that a trial judge can make."  In re Petition of Craig, 131 F.3d 99 at 104.

> ### 2.   Analysis

Plaintiffs assert that they "have a common law right and a First Amendment right to petition (for redress) the court for access to [records related to the grand jury]," as well as "the right to request disclosure of grand jury records pursuant to Fed. R. Crim. P. 6(e)."  (Am. Cmplt. (Dkt. No. 20) ¶ 72)  As discussed above, Plaintiffs seek an order directing the Government to "release to Plaintiffs all substantive and ministerial records of any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' [petitions] to the U.S. Attorney . . . or such subset of such records as the law may allow to be released."  (Id. ¶ 80)

In the alternative, Plaintiffs seek only "ministerial records, and such subset of the substantive records as the Court determines would be appropriate in the reasonable exercise of its discretion, of or regarding any federal grand jury with which the U.S. Attorney has communicated regarding Plaintiffs' [petitions] to the U.S. Attorney. . . ."  (Id.¶ 81)  The "ministerial records" Plaintiffs seek include, inter alia, orders that summon a grand jury or

special grand jury "that has or will receive Plaintiffs' [p]etition, [a]mended [p]etition, exhibits thereto, or information regarding same," as well as roll sheets, records regarding the method used to impanel such jurors, and voting records.  (Id. ¶ 82)

Plaintiffs contend that "[t]here are special circumstances that warrant the disclosure of the grand jury records [they] request[]."  (Id. ¶ 83)  According to Plaintiffs, the Government does not have a "significant . . . interest in continued secrecy" regarding whether the USAO has submitted Plaintiffs' amended petition to the grand jury, because Plaintiffs have already publicly disclosed the materials they provided to the USAO.  Plaintiffs also note that eighteen years have passed since 9/11, which means that "secrecy is not required to prevent the escape of those whose indictment may be contemplated."  Plaintiffs further contend that this matter is "of unusual public importance," that disclosure "would promote public understanding of and confidence in the executive branch, the Department of Justice, the [USAO], and the judiciary," and that the disclosure they seek would not undermine the interests served by maintaining the secrecy of grand jury proceedings.  (Id.)

Defendants contend that the exceptions set forth in Rule 6(e) do not apply here, noting that Plaintiffs are not defendants in a criminal action seeking dismissal of an indictment, and that the grand jury records Plaintiffs seek are not connected to another judicial proceeding. (Def. Br. (Dkt. No. 29) at 27)

Plaintiffs counter that they are not relying solely on Rule 6(e).  Instead, Plaintiffs assert that they "have a common law right and a First Amendment right to petition the court for access to . . .  grand jury related records, in addition to the right to request disclosure of grand jury records pursuant to Fed. R. Crim. P. 6(e)."  (Pltf. Opp. (Dkt. No. 30) at 10)

20

Plaintiffs also contend that "ministerial records" of grand jury proceedings are treated differently than "substantive records" of grand jury proceedings, and that "[m]inisterial records related to a grand jury should not be subject to any grand jury secrecy restrictions imposed by Rule 6(e)."  (Pltf. Opp. (Dkt. No. 30) at 11)  In support of this argument, Plaintiffs rely exclusively on In re Special Grand Jury (for Anchorage, Alaska), 674 F.2d 778 (9th Cir. 1982).  In that case, the Ninth Circuit narrowly construed Rule 6(e) to apply only to "grand jury testimony, votes of the jurors on substantive questions, and similar records," and recognized a right of public access to ministerial grand jury records.  Id. at 781.

The Court concludes that none of the exceptions set forth in Rule 6(e) are applicable here:  the Government has not requested disclosure; Plaintiffs are not criminal defendants seeking dismissal of an indictment; and the grand jury records are not sought "preliminarily to or in connection with a judicial proceeding."  See Fed. R. Crim. P. 6(e)(3)(E).

As to Plaintiffs' application for "ministerial records" of the grand jury, and their argument that "ministerial records" of the grand jury enjoy little if any protection, "[t]he Second Circuit . . . has not recognized such a disclosure rule for ministerial Grand Jury materials." United States v. Reynolds, No. 10CR32A, 2012 WL 5305183, at *11 (W.D.N.Y. Oct. 25, 2012). Indeed, "courts within the Second Circuit . . . have consistently held that obtaining grand jury instructions requires a showing of particularized need," and have rejected requests to "adopt[] a relaxed disclosure rule for ministerial grand jury materials."  United States v. Chambers, No. 3:18-CR-00079 (KAD), 2019 WL 1014850, at *2 (D. Conn. Mar. 4, 2019).  Accordingly, this Court will not distinguish between "ministerial" and "substantive" grand jury materials.  As with any request for grand jury materials, in order to obtain disclosure, Plaintiffs' request "must make

an overall strong showing of 'particularized need' for those materials." Del Cole, 2013 WL 12316374, at *2.

Here, Plaintiffs' showing of a "particularized need for disclosure" is rooted in a similar case the Lawyers' Committee and Architects filed in the U.S. District Court for the District of Columbia, in which they "sought to compel the FBI and DOJ to comply with a 2013-2014 Congressional mandate to perform an independent evaluation of all evidence related to 9/11 not assessed by the original 9/11 Commission (in 2004)." (Pltf. Opp. (Dkt. No. 30) at 12) That case was dismissed on standing grounds. The court held that Plaintiffs' application for a reward from the Rewards for Justice program was too speculative to constitute a basis for standing. (Id.) Plaintiffs have appealed. According to Plaintiffs, the disclosure of grand jury records they seek here is "important for Plaintiffs' ability to demonstrate their standing in the case now on appeal before the United States Court of Appeals for the District of Columbia Circuit," as it "creates a non-speculative scenario where Plaintiffs would have a reasonable probability of receiving a RFJ reward." (Id. at 12-13)

As to the alleged "special circumstances" that justify a release of grand jury material outside the strictures of Rule 6(e), Plaintiffs contend that "the need for secrecy may be largely reduced where grand jury proceedings are not active." (Id. at 11) And, in the event that the USAO has not presented Plaintiffs' amended petition to a grand jury, Plaintiffs contend that the "secrecy presumption should not be invoked at all." (Id. at 12)

Defendants counter that "the need for secrecy is paramount," and that the "special circumstances" "factors weigh heavily in favor of non-disclosure." (Def. Br. (Dkt. No. 29) at 28-29) Given Plaintiffs' theory "that there are currently terrorists at large who are responsible for the 9/11 attacks and that an investigation is necessary to identify these people and bring them to

justice," it is obvious that "maintaining secrecy would be of the utmost concern."  (Id. at 29-30)

As to Plaintiffs' argument that they need the grand jury material in order to buttress their case for

standing in their D.C. action, Defendants contend that "[t]he existence of such a grand jury

investigation . . . would do nothing to alter [the D.C. court's] conclusion that the reward would,

still, be [too] speculative" to confer standing.  (Def. Reply Br. (Dkt. No. 31) at 6)

This Court concludes that Plaintiffs have not shown "that the material they seek is

needed to avoid a possible injustice in another judicial proceeding."  Douglas Oil, 441 U.S. at

222.  Although Plaintiffs argue that "[t]he existence of a grand jury inquiry" concerning the

alleged evidence they submitted to the USAO "creates a non-speculative scenario where

Plaintiffs would have a reasonable probability of receiving a RFJ reward" (Pltf. Opp. (Dkt. No.

30) at 12), this is the same standing argument that this Court has already rejected.

As the D.C. District Court noted in dismissing Plaintiffs' action,

> courts do not lightly speculate on how "independent actors" not before them might
> exercise their broad discretion. . . . Setting aside the chances that [the relief Plaintiffs
> seek] would lead to the arrest or conviction of a terrorist, just consider how much leeway
> the Secretary of State[, who implements the Rewards for Justice program,] has.  The
> decision to pay a reward lies in his "sole discretion." . . . And this decision "shall not be
> subject to judicial review."  So the Secretary is an independent actor who exercises broad
> discretion unreviewable by this Court or any court.

Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray, 424 F. Supp. 3d 26, 34 (D.D.C. 2020) (first

quoting Lujan, 504 U.S. at 561; then quoting 22 U.S.C. § 2708) (emphasis omitted).

In sum, there is no reason to believe that the deficiencies highlighted by the D.C.

District Court in dismissing the Lawyers' Committee action would be cured by disclosure of the

grand jury materials Plaintiffs seek.  Accordingly, Plaintiffs have not demonstrated a

"particularized need" for the grand jury materials they seek.

The "special circumstances" factors listed by the Second Circuit in In re Petition of Craig, 131 F.3d at 106, likewise militate against disclosure of the grand jury material Plaintiffs seek.  In that case, the Second Circuit instructed that "the identity of the party seeking disclosure should . . . carry great weight," and that "the government's position should be paid considerable heed."  Id.  Here, these factors weigh in favor of non-disclosure, because Plaintiffs are not a party to the grand jury proceedings and the Government opposes disclosure.  And as to "[t]he timing of the request" – which the Second Circuit identified as "one of the most crucial elements," id. at 107 – it is evident that public interest in the 9/11 attack remains high, even though nearly twenty years have passed since the attack.  Suffice it to say that the passage of time has not "erode[d] . . . the justifications for continued secrecy."  Id.

The Court concludes that Plaintiffs have not carried their "heavy burden" to justify breaching grand jury secrecy.  Accordingly, Plaintiffs' First Cause of Action will be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 28) is granted.  The Clerk of Court is directed to terminate the motion (Dkt. No. 28) and to close this case.

Dated: New York, New York
         March 24, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge